(No. 49950.—

MARILYN JO KELSAY, Appellant, v. MOTOROLA, INC., Appellee.

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

174

176

KLUCZYNSKI, J., took no part.
UNDERWOOD, J., concurring in part and dissenting in part.

Thomson, Thomson, Zanoni, Flynn, Weintraub & McElvain, of Bloomington (Mike McElvain, of counsel), for appellant.

Robert V. Nystrom and Richard H. Ferri, of Chicago, for appellee.

Harold A. Katz, Irving M. Friedman, Jerome Schur, and Warren E. Eagle, of Katz, Friedman, Schur & Eagle, of Chicago, for *amicus curiae* Community Action Program of the UAW.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Marilyn Jo Kelsay, filed a complaint in the circuit court of Livingston County, seeking compensatory and punitive damages against her ex-employer, Motorola, Inc. The plaintiff alleged that her employment with defendant had been terminated as retaliation for her filing a workmen's compensation claim. The trial court directed a verdict in plaintiff's favor and the jury assessed damages in the amount of $1,000 compensatory damages and $25,000 punitive damages. The court remitted the compensatory damages to $749, which represents the wages plaintiff lost between the time she was discharged and the time she found a new job. On appeal, the Fourth District Appellate Court reversed the judgment of the trial court, holding that an employee has no cause of action against an employer for retaliatory discharge. (51 Ill. App. 3d 1016.) Because a different panel of the same court reached a contrary result in an opinion filed on the same day (*Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022), the appellate court issued a certificate of importance to this court (see 58 Ill. 2d R. 316) so that we may resolve the conflict.

Plaintiff suffered a cut to her thumb while working at the Motorola factory in Pontiac. She received immediate medical attention at a local hospital, where her thumb was stitched. She returned to work later that same afternoon. Shortly thereafter, plaintiff sought advice of

counsel regarding a workmen's compensation claim for her thumb injury. Counsel sent notice of the impending claim to the employer, Motorola, Inc.

Plaintiff spoke with the personnel manager at the Motorola plant, Donald Aherns, after he received notice of the workmen's compensation suit. Aherns told plaintiff that the corporation was aware of the situation, that she would be "more than adequately compensat[ed]" by the corporation for her thumb injury, and that there was no need for her to follow through with her claim. He also informed the plaintiff that it was the corporation's policy to terminate the employment of employees who pursued workmen's compensation claims against it, and advised the plaintiff to "think about it" a little longer. Plaintiff, however, decided to proceed with her claim and, after informing Aherns of her final decision, was discharged. Her compensation claim against Motorola was eventually settled. Subsequently, as noted above, plaintiff sought relief in the Livingston County circuit court against defendant, Motorola, for her retaliatory discharge by the corporation.

This appeal raises several issues. First, should this State recognize a cause of action for retaliatory discharge? If so, is such an action one which may give rise to a claim for punitive damages, and, if so, was the jury's award of $25,000 punitive damages proper in the instant case?

The employer argues that no cause of action should exist in this State for the retaliatory discharge of an employee. He contends that, as of the time of plaintiff's discharge, there was nothing in the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) that impinged on the employer's unfettered right to terminate without cause an employee whose employment contract was at will. Further, the employer argues that recognition of a cause of action for retaliatory discharge is totally inconsistent with the exclusivity provision of the

Act itself, which specifically provides:

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act ***." (Ill. Rev. Stat. 1973, ch. 48, par. 138.11.)

Finally, the employer argues that the legislature's decision to provide solely for criminal punishment of employers who, after 1975, "discharge or *** threaten to discharge *** an employee because of the exercise of his rights or remedies granted to him by [the] Act" (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)), without providing for a *civil* remedy for employees who are so discharged, precludes the plaintiff's action in the instant case.

The Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) substitutes an entirely new system of rights, remedies, and procedure for all previously existing common law rights and liabilities between employers and employees subject to the Act for accidental injuries or death of employees arising out of and in the course of the employment. (37 Ill. L. & Prac. *Workmen's Compensation* sec. 2 (1958).) Pursuant to the statutory scheme implemented by the Act, the employee gave up his common law rights to sue his employer in tort, but recovery for injuries arising out of and in the course of his employment became automatic without regard to any fault on his part. The employer, who gave up the right to plead the numerous common law defenses, was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme, and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. (See 81 Am. Jur. 2d *Workmen's Compensation* sec. 1 *et seq.* (1976).) This trade-off between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and equi-

table compensation for their injuries. See *O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167.

The Workmen's Compensation Act, in light of its beneficent purpose, is a humane law of a remedial nature. (*Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590.) It provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this State. Consequently, its enactment by the legislature was in furtherance of sound public policy. (*Deibeikis v. Link-Belt Co.* (1914), 261 Ill. 454.) We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge.

While noting that in 1975, subsequent to plaintiff's discharge, the Workmen's Compensation Act was amended making it unlawful for an employer to interfere with or to coerce the employee in the exercise of his rights under the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)), the employer argues that as of the time of plaintiff's discharge, the legislature had neither prohibited nor provided for any remedy for a discharge resulting from the filing of a workmen's compensation claim. As such, its authority to terminate the employee, whose contract was at will, was absolute. In this regard he cites various statutes in which the legislature has seen fit to limit the employer's right to discharge (the wage assignment act (Ill. Rev. Stat. 1975, ch. 48, par. 39.11), the Service Men's Employment Tenure Act (Ill. Rev. Stat. 1973, ch. 126½, par. 33), and the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*)), and correctly notes that none of these limitations are applicable to the instant case.

We are not convinced that an employer's otherwise absolute power to terminate an employee at will should prevail when that power is exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act. As we have noted, the legislature enacted the workmen's compensation law as a

comprehensive scheme to provide for efficient and expeditious remedies for injured employees. This scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act. We cannot ignore the fact that when faced with such a dilemma many employees, whose common law rights have been supplanted by the Act, would choose to retain their jobs, and thus, in effect, would be left without a remedy either common law or statutory. This result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and is contrary to the public policy as expressed in the Workmen's Compensation Act. We cannot believe that the legislature, even in the absence of an explicit proscription against retaliatory discharge, intended such a result.

We recognize that the Court of Appeals for the Seventh Circuit has reached a contrary conclusion in construing the Illinois Workmen's Compensation Act. In *Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, the court considered the question without the benefit of any prior decision of this court on the question involved and held that inasmuch as the legislature had not provided for a prohibition against retaliatory discharge, the employer was free to exercise its traditional right to discharge at will. Decisions of the Federal courts in construing statutes of this State are not binding on this court. For the reasons above stated, we believe that the construction adopted in *Loucks* contravenes the public policy of this State.

Two recent cases in other States have held that an employee has a cause of action against an employer for retaliatory discharge. *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425, and *Sventko v. Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W.2d 151.

In *Frampton,* the plaintiff had been injured on the job, and received workmen's compensation. Later, she

made a claim for increased disability and received a settlement. Soon thereafter she was fired without cause, and brought an action for retaliatory discharge against the employer. In sustaining the cause of action, the Indiana Supreme Court noted that to prohibit a cause of action under such circumstances would be to sanction the ability of employers to coerce employees into forgoing their rights and by so doing unilaterally defy and destroy the function of the State's workmen's compensation act. See 2A A. Larson, Workmen's Compensation sec. 68.36 (Supp. 1978).

Similarly, in *Sventko,* the plaintiff was discharged for filing a workmen's compensation claim against her employer. The Michigan Appellate Court, in holding that the employee should have an action for retaliatory discharge, stated that an "employer at will is not free to discharge an employee when the reason for the discharge is an intention on the part of the employer to contravene the public policy of [the] state." 69 Mich. App. 644, 647, 245 N.W.2d 151, 153.

There are decisions of other State courts that have held to the contrary (see Annot., 63 A.L.R.3d 979, 983 (1975)). We believe, however, that the reasoning in *Frampton* and *Sventko* is persuasive and conforms with the public policy expressed by the legislature in our workmen's compensation act. Concerning the decision of *Frampton v. Central Indiana Gas Co.,* we agree with the comment of Professor A. Larson that "[i]t is odd that such a decision was so long in coming." (2A A. Larson, Workmen's Compensation sec. 68.36 (Supp. 1978).) We do not agree with the employer's argument that *Frampton* is distinguishable from the instant case because the Indiana Supreme Court "placed express reliance on Indiana's statutory language prohibiting any 'device' to circumvent employers' liabilities under the Act," (*Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, 748), and

because no analogous language can be found in the Illinois statute. While the Indiana Supreme Court may have used the statutory language to buttress its decision, the overriding principle enunciated by the court is that the workmen's compensation statute embraced the important public policy that compensation should be available to injured workers. Certainly it cannot be argued that the absence of any language from the Act prohibiting devices whereby employers may circumvent their duties under the Act can be interpreted to mean that retaliatory discharge is less repugnant to the public policy of this State than it is to that of Indiana.

The employer argues that the exclusivity provision of section 11 of the Act, which provides that the provisions of the Act "shall be the measure of the responsibility of any employer" (Ill. Rev. Stat. 1973, ch. 48, par. 138.11) precludes an action for retaliatory discharge. Motorola argues that this conclusion is compelled because the section clearly shows that the legislature intended that the Act should be exclusive in providing for employees' rights and remedies. We do not agree. First, that section was meant to limit recovery by employees to the extent provided by the Act in regard to work-related injuries, and was not intended to insulate the employer from independent tort actions. Second, we cannot accept a construction of section 11 which would allow employers to put employees in a position of choosing between their jobs and seeking their remedies under the Act. As we have already discussed, to prevent such anomalous results it is necessary to allow an action for retaliatory discharge. It would be illogical to bar the action on the basis of language of the Act itself, the fundamental purpose of which is to ensure rights and remedies to employees who have compensable claims. Accordingly, we feel it is improper to interpret section 11 in the manner suggested by the employer.

The employer argues that the absence of any provi-

sions for civil remedies for retaliatory discharge in the 1975 amendments, which make it a criminal offense for an employer to threaten or effect such a discharge (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)), is a conscious decision by the legislature that no such civil remedy shall exist. We do not agree. As we have noted, retaliatory discharge is offensive to the public policy of this State as stated in the Workmen's Compensation Act. This policy can only be effectively implemented and enforced by allowing a civil remedy for damages, distinct from any criminal sanctions which may be imposed on employers for violating the Act after 1975. The imposition of a small fine, enuring to the benefit of the State, does nothing to alleviate the plight of those employees who are threatened with retaliation and forgo their rights, or those who lose their jobs when they proceed to file claims under the Act. It is conceivable, moreover, that some employers would risk the threat of criminal sanction in order to escape their responsibility under the Act. Further, the fact that an act is penal in nature does not bar a civil remedy, and where a statute is enacted for the benefit of a particular class of individuals a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned. *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152.

In *Teale v. Sears, Roebuck & Co.* (1976), 66 Ill. 2d 1, this court held that a discharged employee had no cause of action for compensatory and punitive damages for discharge from employment in violation of what was referred to as the "Age Discrimination Act" (Ill. Rev. Stat. 1975, ch. 48, pars. 881 to 887). In that case the Act did not specifically authorize a civil action for damages, but it did provide for a criminal penalty for a violation of the Act. However, this court found within the language of the Act an "internal restriction [which] strongly militates against, if indeed it does not preclude, expansion of the statutory

sanction by implication." (66 Ill. 2d 1, 5.) The court found the restrictive inference that flows from the language of the statute conclusive when compared to civil remedies which the General Assembly had expressly provided for other types of employment discrimination.

We now consider the award of $25,000 punitive damages. In this connection, two points merit consideration, first, whether punitive damages may generally be awarded in cases for retaliatory discharge, and second, whether the jury's award for such damages was proper in the instant case.

It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others (*Consolidated Coal Co. v. Haenni* (1893), 146 Ill. 614). Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. (*Eshelman v. Rawalt* (1921), 298 Ill. 192, 197.) And, while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87.

In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workmen's compensation claim. For example in this case, the plaintiff was entitled to only $749 compensatory damages. We noted above the very real possibility that some employers would risk the threat of criminal sanction in order to escape their responsibilities under the Act. The statute makes such conduct, as is involved in this

case, a petty offense (Ill. Rev. Stat. 1975, ch. 48, par. 138.26), which is punishable by a fine not to exceed $500 (Ill. Rev. Stat. 1975, ch. 38, par. 1005—9—1(4)). The imposition on the employer of the small additional obligation to pay a wrongfully discharged employee compensation would do little to discourage the practice of retaliatory discharge, which mocks the public policy of this State as announced in the Workmen's Compensation Act. In the absence of other effective means of deterrence, punitive damages must be permitted to prevent the discharging of employees for filing workmen's compensation claims.

Contrary to the arguments presented by the defendant, there is no persuasive reason to totally rule out an award of punitive damages in an action for retaliatory discharge. The cases and authorities cited by defendant in support of his arguments are inapposite. Those cases and authorities recognize the generally accepted proposition that exemplary damages are not recoverable for wrongful discharge. (See, *e.g.*, 56 C.J.S. *Master and Servant* sec. 58 (1948).) However, the validity of this proposition rests on the fact that such a cause of action sounds in contract (53 Am. Jur. 2d *Master and Servant* sec. 63 (1970)), and traditionally actions for breach of contract have not given rise to claims for punitive damages (see 11 Williston, Contracts sec. 1340 (3d ed. 1968)). However, the general rule has no application where, as here, the cause of action is premised upon a separate and independent tort. (*Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, *rev'd on other grounds* (1976), 64 Ill. 2d 338.) Under such circumstances, when the facts permit, punitive damages may be properly awarded.

However, under the facts of the present case, we are compelled to conclude that the award for $25,000 as punitive damages was improper. As we have noted, the

function of punitive damages is similar to that of a criminal penalty, *i.e.,* as a punishment to the wrongdoer and as a means to deter such a wrongdoer and others from committing like offenses in the future. (See *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31.) Because of their penal nature, punitive damages are not favored in the law, and the courts must take caution to see that punitive damages are not improperly or unwisely awarded. (See *Eshelman v. Rawalt* (1921), 298 Ill. 192, 197.) Adherence to this rule compels us to conclude that punitive damages should not be awarded where, as here, the cause of action forming the basis for their award is a novel one.

In this regard, we find the reasoning of *Nees v. Hocks* (1975), 272 Ore. 210, 536 P.2d 512, persuasive. In that case, an employee who was dismissed because she went on jury duty brought an action against her employer for retaliatory discharge. The Supreme Court of Oregon sustained the cause of action and allowed the recovery of compensatory damages, but in denying recovery for punitive damages, held:

> "If we held that punitive damages could be awarded in the present case we would be permitting the jury to punish defendants for conduct which they could not have determined beforehand was even actionable. The assessment of punitive damages has some of the same functions as the sanctions of criminal law [citation]. The sanctions of the criminal law cannot constitutionally be imposed when the criminality of the conduct is not capable of being known beforehand." (272 Ore. 210, 220-21, 536 P.2d 512, 517.)

Similar considerations apply in the instant case. At the time of plaintiff's discharge there was no provision in the Act making it unlawful to discharge an employee for seeking relief under its provisions. Also, at that time there

was no decision of this court holding that a retaliatory discharge in such cases was actionable. The opinion of the Indiana Supreme Court in *Frampton* was filed on May 1, 1973, only one month before the plaintiff in this case was discharged. *Sventko* was not decided by the Michigan Appellate Court until 1976. As against this absence of authority which would alert the defendant to the existence of a cause of action for discharging the plaintiff for pursuing her compensation claim, there was authority which would have reasonably caused the defendant to conclude that its conduct was not actionable. Plaintiff was an employee not for a specific term but at will, and generally, an employer may discharge such an employee whenever and for whatever cause he chooses without incurring liability. (53 Am. Jur. 2d *Master and Servant* sec. 43 (1970).) Also, at the time of plaintiff's discharge, there had been decisions in other States that had held that retaliatory discharge for seeking such relief was not actionable. (*Christy v. Petrus* (1956), 365 Mo. 1187, 295 S.W.2d 122; *Raley v. Darling Shop of Greenville, Inc.* (1950), 216 S.C. 536, 59 S.E.2d 148.) In summary, the cause of action asserted here was novel and there was no statutory or judicial pronouncement which would have caused the defendant to believe that its conduct was actionable while there was authority which would reasonably cause one to believe that it was not. Under these circumstances, although we hold that the plaintiff is entitled to compensatory damages, we conclude that it would be extremely unfair to sustain an award against the defendant for punitive damages. (See *People v. Patton* (1974), 57 Ill. 2d 43; *Bassi v. Langloss* (1961), 22 Ill. 2d 190; *In re Luster* (1957), 12 Ill. 2d 25.) We hold that punitive damages may properly be awarded in cases such as the one under consideration for retaliatory discharge subsequent to the date this opinion is filed. However, we hold that it was improper for the trial court to award

punitive damages in this case.

In summary, the judgment of the appellate court denying plaintiff a cause of action for retaliatory discharge is reversed. Plaintiff's award in the amount of $749 compensatory damages by the trial court is affirmed, but the trial court's order for $25,000 punitive damages is reversed.

*Appellate court reversed; circuit court affirmed in part and reversed in part.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, concurring in part and dissenting in part:

I write no brief for an employer who tells an industrially injured employee that the employee will be discharged if a claim for compensation is filed. Such statements, even when accompanied by assurances that all expenses connected with the injury will be paid, really do not appeal to one's sense of fairness. Plaintiff's arguments in favor of a cause of action for retaliatory discharges, if limited to compensatory damages, have considerable appeal, and such an action may well be a desirable remedy for such discharges. My disagreement with the majority stems from my belief that the merits of those arguments were clearly for the legislature to assess, the legislature did not adopt them, and the majority opinion in this case is, it seems to me, simply a substitution of the preferences of a majority of the members of this court for the considered judgment of the General Assembly.

It is only stating the obvious to say that it is fundamental in our system of government that the law-making function is vested in the legislative branch. The

majority's intrusion into the legislative field in this case typifies the lack of judicial self-restraint which has been a source of concern and comment throughout our history. Mr. Chief Justice Marshall spoke to it as follows: "[The judicial] department has no will in any case. *** Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or in other words, to the will of the law." (*Osborn v. Bank of the United States* (1824), 22 U.S. (9 Wheat.) 738, 866, 6 L. Ed. 204, 234.) It is essential to a preservation of the separation of powers that those of us who serve in the judicial branch subordinate our desires and preferences to the actions of the legislative and executive branches as long as those are expressed in constitutional terms.

Mr. Justice Harlan, dissenting in *Wesberry v. Sanders* (1964), 376 U.S. 1, 48, 11 L. Ed. 481, 509, 84 S. Ct. 526, 551, phrased it thus: "The Constitution does not confer on the Court blanket authority to step into every situation where the political branch may be thought to have fallen short. The stability of this institution ultimately depends not only upon its being alert to keep the other branches of government within constitutional bounds but equally upon recognition of the limitations on the Court's own functions in the constitutional system."

Precisely in point here is the admonition: "But it is not our function to engraft on a statute additions which we think the legislature logically might or should have made." *United States v. Cooper Corp.* (1941), 312 U.S. 600, 605, 85 L. Ed. 1071, 1075, 61 S. Ct. 742, 744 (Roberts, J.).

My colleagues' assertion that their creation of a civil remedy is required in order to adequately implement the beneficent purpose of the Workmen's Compensation Act makes one wonder why, if the need was so great, the question had not been presented earlier in the more than 65 years of the Act's existence. Nor do I understand how

it is that on the basis of a record devoid of proof of the frequency of retaliatory discharges the majority is able to discern so much more clearly than the legislature that the Act "would be seriously undermined" without this new remedy which the court now manufactures.

The employment contract in this case was terminable at the will of either party as the majority concedes. But by the action it takes today, the majority transforms that contract, as the Court of Appeals for the Seventh Circuit suggested, into tenured employment for every employee who files a compensation claim against an employer. "Certainly it could be argued that acceptance of \*\*\* [plaintiff's] claim here would be tantamount to writing into the Illinois statute a provision for tenure in the event of an industrial injury." (*Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, 746-47.) Henceforth, no matter how indolent, insubordinate or obnoxious an employee may be, if he has filed a compensation claim against an employer, that employer may thereafter discharge him only at the risk of being compelled to defend a suit for retaliatory discharge and unlimited punitive damages, which could well severely impair or destroy the solvency of small businesses.

As the majority notes, a 1975 amendment to the Workmen's Compensation Act makes it a criminal offense for an employer to threaten or effect a discharge in retaliation for an employee's exercise of his rights under the Act. (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h).) While that amendment post-dated the episode with which we deal in this case, it is certainly relevant and illuminating of the General Assembly's understanding of the Workmen's Compensation Act and the legislative intent in adopting the amendment. Obviously the Act had not been thought to preclude retaliatory discharges and to provide to one so discharged a cause of action for damages, for, if it did, the amendment was unnecessary. We presume the legislature

did not intend to perform a useless act (*People v. McCoy* (1976), 63 Ill. 2d 40, 45), and the rule is that "where a statute is amended, it will be presumed that the legislature intended to effect some change in the law as it formerly existed. [Citation.]" (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 373.) In adopting the 1975 amendment, it is clear to me that the members of the General Assembly thought they were creating, for the first time, a remedy for retaliatory discharges and established what they considered to be a sufficient deterrent. They did not include civil liability on the part of the employer to the discharged employee. It is unrealistic to suppose that those who drafted, those who sponsored and the members of the General Assembly which adopted the Illinois law on retaliatory discharges simply ignored the question of civil remedies if those remedies are in fact as vital to the effective administration of the Act as the majority now asserts. Had it been thought either necessary or desirable, a civil action for such damages as were considered appropriate would have been included in the comprehensive and integrated Workmen's Compensation Act just as it has been in similar legislative enactments hereinafter referred to. Not to be deterred by these considerations, however, my colleagues state in exercising their superior wisdom that the policy against retaliatory discharge "can only be effectively implemented and enforced by allowing a civil remedy for damages" (74 Ill. 2d at 185).

I do not doubt that the majority is "convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge," as the opinion states (74 Ill. 2d at 181), but that fact should be irrelevant, for the legislature was not so convinced. Today's decision, it seems to me, simply usurps the power and function of the legislative branch of government—and evidences an unwillingness by the majority to exercise the self-restraint so essential if the judiciary is to maintain its proper function.

No matter how emotionally appealing the situation presented, our law-making power lies only within the limits of our common law heritage and the mandate of our constitutions; it does not include amending specific legislation which we feel, however rightly, is lacking in some respect. Particularly does it not include providing a cause of action including both compensatory and punitive damages which the General Assembly deliberately omitted.

In creating this cause of action, the majority has effectively overruled this court's recent opinion in *Teale v. Sears, Roebuck & Co.* (1976), 66 Ill. 2d 1, while purporting to distinguish it. In *Teale,* an employee brought a civil action for discharge alleged to be wrongful under the Age Discrimination Act (Ill. Rev. Stat. 1975, ch. 48, pars. 881 through 887.) That Act made it unlawful to discharge a person because of his age and provided a criminal penalty for doing so. The Act contained a legislative declaration of policy far more certain and explicit than the general public policy formulations relied upon by the majority in the case now before the court. Section 1 stated:

> "(a) The General Assembly declares that the practice of discriminating in employment against properly qualified persons because of their age is contrary to American principles of liberty and equality of opportunity ***.
> ***
> (c) The right to employment otherwise lawful without discrimination because of age *** is hereby recognized as and declared to be a right of all the people of the State which shall be protected as provided herein.
> (d) It is hereby declared to be the policy of the State to protect the right recognized and declared in paragraph (c) of this Section and to eliminate all such discrimination to the fullest extent permitted. *This Act shall be construed to effectuate such policy.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 881.)

Despite this strong statement of public policy this court unanimously declined to expand that statute and held that

no civil remedy for the alleged wrongful discharge existed. Mr. Justice Schaefer, speaking for the court, first noted that "[t]he Act does not expressly authorize a civil action for damages." (66 Ill. 2d 1, 4.) He then stated:

"And when we look beyond the terms of this statute and examine the civil remedies which the General Assembly has expressly provided for other types of discrimination, the restrictive inference that flows from the language of the statute itself becomes conclusive. Some of the variant forms of sanction are these:

Discrimination in employment under contracts for public buildings or public works on account of race, color, sex or national origin is prohibited, and a violation is a Class B misdemeanor. The statute also specifically provides for recovery (apparently in the same amount as the criminal fine) in a civil action brought by the aggrieved person. Ill. Rev. Stat. 1973, ch. 29, pars. 21, 22.

Any official or operator of any public place of accommodation or amusement who discriminates against any person by reason of race, religion, color, national ancestry or physical or mental handicap is guilty of a Class B misdemeanor and is specifically made liable to the person aggrieved for not less than $100 nor more than $1,000 to be recovered in a civil action. Additional remedies by way of injunction and abatement of nuisance are also provided. Ill. Rev. Stat. 1973, ch. 38, pars. 13—1 through 13—4.

Any hospital which has been adjudicated to have denied admission to any person because of race, color or creed, loses its exemption from taxation. Ill. Rev. Stat.

1973, ch. 120, par. 500.7.

Any member of a school board, superintendent, principal or other school officer who seeks information concerning the color, race, nationality, religion or religious affiliation of any person in connection with his employment or assignment, is liable to a penalty of not less than $100 nor more than $500 to be recovered by the person aggrieved in a civil action, and in addition is guilty of a Class B misdemeanor. Ill. Rev. Stat. 1973, ch. 122, par. 24—4.

The carefully limited civil remedies authorized by these statutes demonstrate, in our opinion, that it would be incongruous to derive by implication a right to recover unlimited damages for a violation of this statute." 66 Ill. 2d 1, 5-6.

The court in *Teale* also relied on the legislatively declared restriction that the right thereby created "shall be protected as provided herein." Similarly the Workmen's Compensation Act in the case before us states that the provisions of the Act "shall be the measure of the responsibility of any employer ***." (Ill. Rev. Stat. 1973, ch. 48, par. 138.11.) Certainly this language is at least as restrictive as that which the *Teale* court held precluded the very civil remedy which a majority of this court now creates. *Teale* is not only persuasive in its reasoning, it is controlling precedent to which this court should adhere, or, at least, have the candor to overrule.

The majority seemingly believes the *Frampton* (*Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425) and *Sventko* (*Sventko v. Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W.2d 151) decisions support its emotional approach to this case. The *Frampton* court, however, upheld the cause of action for retaliatory discharge because it found such a discharge to be a

"device" which the Indiana statute specifically prohibited. No similar language appears in our act. Also, neither the Indiana nor Michigan legislature had prescribed penalties for retaliatory discharges as ours has done. In fact, the majority of courts that have considered this question have denied recovery, refusing to recognize a private cause of action for retaliatory discharge. In the most recent case, *Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, the court, in interpreting Illinois law, determined that the absence of a provision in the Workmen's Compensation Act creating a private cause of action was a deliberate policy decision of the Illinois legislature: "We think it rather unlikely that a retaliatory discharge prohibition would have been omitted from this comprehensive and integrated legislation if it had been intended." 551 F.2d 745, 748. See also *Christy v. Petrus* (1956), 365 Mo. 1187, 295 S.W.2d 122; *Narens v. Campbell Sixty-Six Express, Inc.* (Mo. 1961), 347 S.W.2d 204; *Raley v. Darling Shop of Greenville, Inc.* (1950), 216 S.C. 536, 59 S.E.2d 148.

Since I do not agree that a cause of action exists for either compensatory or punitive damages, I concur with the court's holding that punitive damages are not available to plaintiff in this case. I disagree with the *obiter dicta* statements regarding the availability of punitive damages in future cases. As was pointed out in the dissenting opinion in *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 150: "The doctrine of punitive damages is not favored by law [citations], and the power of giving punitive damages should be exercised with great caution and they should be properly confined within the narrowest of limitations [citation]." Surely where the legislature has forbidden certain actions and provided a specific penalty for a violation, this court has no authority, on generalized policy grounds, to hold the legislated penalty insufficient and provide a stiffer one. Obviously, the General Assembly felt that the penalty it decided upon was sufficient;

otherwise, of course, it would have provided a more severe penalty, civil remedies or both.

As Mr. Justice White, dissenting, said in *Roe v. Wade* (1973), 410 U.S. at 222, 35 L. Ed. 2d at 196, 93 S. Ct. at 763: "As an exercise of raw judicial power, the Court perhaps has authority to do what it does today; but in my view its judgment is an improvident and extravagant exercise of the power of judicial review that the Constitution extends to this Court."

I would affirm the judgment of the appellate court.