**Paul Dan HICKS, Appellant,**

**v.**

**TULSA DYNASPAN, INC., an Oklahoma corporation, Appellee.**

**No. 60978.**

Court of Appeals of Oklahoma, Division 3.

Jan. 8, 1985.

Released for Publication by Order of Court of Appeals Feb. 11, 1985.

John W. Hunt, Tulsa, for appellant,

Marc F. Conley, Tulsa, for appellee.

CHARLES M. WILSON, Judge:

Paul Dan Hicks appeals the summary judgment entered in favor of Tulsa Dynaspan. Also challenged is the trial court's order striking plaintiff's prayer for punitive damages from his petition.

Hicks sought recovery for retaliatory discharge under 85 O.S. 1981 §§ 5 & 6. The trial judge found that punitive damages cannot be recovered in actions brought under 85 O.S. 1981 §§ 5 & 6, and granted Tulsa Dynaspan's motion to strike. The court subsequently granted summary judgment against Hicks, finding that there were no disputed material facts showing that Hicks had done any of the four protected acts set forth in § 5 prior to his dismissal.

Hicks' deposition and two affidavits are the only evidence of record on appeal. According to the deposition on October 6, 1981, Hicks was cutting a steel strand out of concrete when steel fragments flew into his eye. He asked assistant plant manager Jimmy Gardner what to do and Gardner told him to "wait a couple of days, it might just be dirt or something." After a week, Hicks could hardly hold his eye open. He went to Jim Markle, plant manager and co-owner of Tulsa Dynaspan, and told him that he needed to see a doctor. Markle told Hicks to use his personal insurance if possible, because "our workmen's comp isn't too good out here." Hicks wasn't insured and asked Markle if worker's compensation would pay for it. Markle said "they would try to take care of it somehow"; and "I (Hicks) could use theirs if, you know, I didn't have it (insurance)." Hicks then left work early, with Markle's knowledge, to go see Dr. Thomas Story. He couldn't get in to see the doctor that day, so he left and went back the following morning, October 13, after again notifying Markle. Dr. Story removed one steel fragment from Hicks' eye and put a patch on it, but did not allow Hicks to return to work until the next day, October 14. Hicks worked October 14 with the patch still on his eye. When he arrived at work October 15 he was fired by Buck Evilsizer, another supervisor, supposedly for leaving early the previous day. On October 19, Hicks contacted a lawyer and on November 1 filed his Notice of Injury and Request for Compensation. His compensation claim was later settled.

Hicks admitted in his deposition that he did not remember telling anyone at Tulsa Dynaspan that he was going to file a worker's compensation claim. He also admitted that he never told anyone at Tulsa Dynaspan that he wanted them to pay Dr. Story's bill. However, two affidavits filed by Hicks said that prior to providing him medical treatment on October 13, Ann Cypert, who was in charge of Dr. Story's billing, phoned Tulsa Dynaspan and spoke with someone who confirmed that they were in charge of the company's workers' compensation program. Cypert said that Hicks was seeking medical treatment, and the person verified that this was a workers' compensation matter and that the bill should be sent to Tulsa Dynaspan in care of Jim Markle. The bill for the October 13 charges was sent to Tulsa Dynaspan on November 30, 1982, and payment was received on December 16, 1982.

Hicks filed this cause of action on March 18, 1982. He alleged that he was fired because he had instituted proceedings under the provisions of 85 O.S. 1981 § 1 et seq. He prayed for $4,752.00 actual damages and $50,000 exemplary damages.

85 O.S. 1981 § 5 provides:

No person ... may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding....

The evidence presented by Hicks shows that he had instituted or caused to be instituted proceedings under the Workers' Compensation Act. In order to give the phrase "instituted ... or cause to be instituted ... any proceeding" operative effect, it must be construed to mean actions taken by a Workers' Compensation claimant other than the filing of his claim. Otherwise, the phrase would be superfluous within the wording of the statute. See *Texas Steel Co. v. Douglas*, 533 S.W.2d 111 (Tex.1976).

When Dr. Story's office notified Tulsa Dynaspan that Hicks was seeking medical treatment, and Tulsa Dynaspan responded by categorizing it as a compensation matter and later paying the bill, Hicks' pursuit of his right to compensation was sufficiently advanced to invoke the protection of § 5. Hicks had also promptly notified Gardner and Markle of his injury and need for compensation coverage. The injury, notice by Dr. Story's office, and discharge were reasonably close in time. Tulsa Dynaspan has not presented any evidence to contradict these facts. We feel Hicks is entitled under § 5 to assert his claim and present the issue to a jury. Whether the firing was for just cause or in retaliation remains a question of fact. We therefore reverse the summary judgment and remand the case for further proceedings.

Next, we have the question of whether punitive damages are recoverable in actions brought under 85 O.S. 1981 §§ 5 & 6. Tulsa Dynaspan argues that §§ 5 & 6 create a right and cause of action that did not exist previously. Because the statute provides a remedy for its violation, that remedy is exclusive. Hicks contends that limiting recovery to compensatory damages only will not sufficiently deter violations of the statute and that the same broad public policy considerations discussed above apply here.

85 O.S. 1981 § 6 provides that "A person ... who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation...." Tulsa Dynaspan argues that because punitive damages were not expressly included in the statute, the Legislature intended to exclude them from the meaning of "reasonable damages suffered." The maxim that mention of one thing in a statute implies exclusion of another is merely an auxiliary rule of statutory construction, not a rule of substantive law. It should never be applied to defeat apparent legislative intent. *Hardesty v. Andro Corporation-Webster Division*, 555 P.2d 1030 (1976). Punitive damages have long been allowed when a defendant is guilty of fraud, oppression, gross negligence, malice, evil intent or reckless and wanton disregard of another's rights. The element of retaliatory intent indispensible to the plaintiff's cause of action could foreseeably rise to this level. Further, actual damages may be minimal, if the employee has immediately found another job and has no significant lost wages. The amount may be insufficient to stop the employer from ignoring the statute, and could discourage the injured employee, threatened with discharge, from claiming his compensation. Punitive damages may be necessary to deter conduct which would frustrate the firmly grounded purpose of the workers' compensation laws. Other states which have adopted retaliatory discharge are in accord with this policy. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *Murphy v. City of Topeka-Shawnee County*

**20**

*Dept. of Labor Services,* 6 Kan.App.2d 488, 630 P.2d 186 (1981); *Hansen v. Harrah's,* 675 P.2d 394 (Nev.1984). A finding of rela- tiatory discharge does not automatically entitle a plaintiff to punitive damages. He must plead and prove that the facts fall under 23 O.S. 1981 § 9 in addition to prov- ing retaliation. This is also a question of fact for the jury to decide.

■ Section 6 incorporates the definition of damages found in 23 O.S. 1981 § 3: "the legally measured detriment to be ascer- tained by the fact-finding process at trial." *WRG Construction Co. v. Hoebel,* 600 P.2d 334 (1979). Both § 3 and 23 O.S. 1981 § 9 were in effect at the time the retaliatory discharge statutes were passed. We find no indication that the Legislature intended to exclude § 9 after incorporating § 3. We conclude that punitive damages are recov- erable in retaliatory discharge cases. The trial court's order striking punitive dam- ages from Hicks' petition is reversed.

Case REVERSED and REMANDED for further proceedings.

HUNTER, P.J., and HOWARD, J. con- cur.