2020 IL App (1st) 192398
Opinion filed: September 18, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-2398

| | | |
|---|---|---|
| MARQUITA McDONALD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 2017 CH 11311 |
| SYMPHONY BRONZEVILLE PARK LLC, an Illinois Limited Liability Company; SYMCARE HEALTHCARE LLC, an Illinois Limited Liability Company; and SYMCARE HMG, LLC, an Illinois Limited Liability Company, | ) ) ) ) ) ) ) | Honorable Raymond W. Mitchell, Judge, presiding. |
| Defendants | ) ) | |
| (Symphony Bronzeville Park, LLC, Defendant-Appellant). | ) | |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1    In this interlocutory appeal, brought pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), we consider the following certified question: "Do[ ] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under [the Biometric Information Privacy Act] where an employer is alleged to have violated an employee's statutory privacy rights under [the Biometric Information Privacy Act]?" We answer the certified question in the negative.

¶ 2    In August 2017, plaintiff-appellee, Marquita McDonald, filed this class action lawsuit against defendant-appellant, Symphony Bronzeville Park, LLC, an Illinois limited liability company (Bronzeville), and Symphony Healthcare LLC, an Illinois limited liability company. Therein, McDonald generally alleged that she was employed by Bronzeville from December 2016

to February 2017. She further alleged that she was required by her employer to provide biometric information by scanning her fingerprint for the purpose of utilizing a fingerprint-based time clock system implemented by defendants, as were the other members of a proposed class of defendants' employees.

¶ 3    The complaint further alleged that defendants had violated—and continued to violate—various statutory requirements of the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/1 *et seq.* (West 2018)) by negligently collecting this biometric information from McDonald and the members of a proposed class of defendants' employees without properly (1) informing the employees in advance and in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used; (2) providing a publicly available retention schedule and guidelines for permanently destroying the scanned fingerprints; and (3) obtaining a written release from the employees prior to the collection of their fingerprints. As such, the first count of the complaint sought, on behalf of McDonald and the proposed class members (1) injunctive and equitable relief requiring defendants to comply with the requirements of the Privacy Act, (2) liquidated, statutory damages of $1000 for each of defendants' negligent violations of the Privacy Act, and (3) statutory attorney fees and costs.

¶ 4    The second count of the complaint incorporated the foregoing allegations and set out a common law claim of negligence against defendants. Therein, defendants were alleged to have a duty of reasonable care to comply with the requirements of the Privacy Act or, alternatively, a heightened duty to do so as the employers of McDonald and the proposed class members. Contending that defendants had violated these duties, the complaint sought damages for the injuries resulting from this negligence in an amount to be determined at trial. Of note, in each count of the complaint it was alleged that as a result of defendants' wrongful conduct, McDonald had

suffered and continued to suffer "mental anguish and mental injury" in that she "experiences mental anguish when thinking about what would happen to her biometric identifiers or information if Defendants' went bankrupt, whether Defendant will ever delete her biometric identifiers or information, and whether (and to whom) Defendants share her biometric identifiers or information."

¶ 5    Defendants filed motions to dismiss the class action complaint. Among the arguments raised by defendants was an assertion that any claims made by McDonald on her own behalf or on behalf of any of defendants' other employees would be barred by the exclusivity provisions of the Workers' Compensation Act (Compensation Act) (820 ILCS 305/1 *et seq.* (West 2018)).

¶ 6    In response, McDonald was granted leave to file an amended complaint in which she (1) removed Symphony Healthcare LLC as a defendant and added as defendants two related entities, Symcare Healthcare LLC, an Illinois limited liability company, and Symcare HMG LLC, an Illinois limited liability company; (2) withdrew the common law negligence claim; and (3) removed any allegation that McDonald suffered mental anguish as a result of defendants' purported violations of the Privacy Act. The operative, amended complaint also specifically sought recovery of liquidated damages under the Privacy Act, not any actual damages.

¶ 7    After full briefing by the parties, the circuit court denied the motions to dismiss the amended complaint in a written order entered June 17, 2019. Therein, and as relevant here, the circuit court rejected the assertion the Compensation Act preempted any claims by an employee against an employer under the Privacy Act. Bronzeville thereafter filed a motion seeking reconsideration of that conclusion or, alternatively, certification for immediate appeal of two questions regarding this conclusion pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). In a written order entered on October 29, 2019, the circuit court denied the motion to

reconsider but certified the following question for interlocutory appeal: "Do[ ] the exclusivity provisions of the Workers' Compensation Act bar a claim for statutory damages under [the Privacy Act] where an employer is alleged to have violated an employee's statutory privacy rights under [the Privacy Act]?" The circuit court also stayed the proceedings before it, pending resolution of the certified question in the appellate court.

¶ 8    Bronzeville sought leave to appeal in November 2019, and this court granted such leave in December 2019. Thereafter, we allowed a group of businesses facing similar class action lawsuits by employees in the circuit courts, collectively referred to as the "Affected Illinois Employers," to file a brief as *amicus curiae* on behalf of Bronzeville.

¶ 9    Rule 308 provides in relevant part:

"When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019).

¶ 10    "The scope of review in an interlocutory appeal brought under Rule 308 is limited to the certified question." *Wesly v. National Hemophilia Foundation*, 2020 IL App (3d) 170569, ¶ 8. As such, certified questions "must not seek an application of the law to the facts of a specific case." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21; *Coldwater v. Village of Elwood*, 2020 IL App (3d) 190247, ¶ 13 ("Our review is strictly limited to the certified question, rather than the

propriety of the parties' underlying claims."). As such, and "[b]y definition, certified questions are questions of law subject to *de novo* review." *Rozsavolgyi*, 2017 IL 121048, ¶ 21.[1]

¶ 11   In addition, answering the certified question will necessarily require us to engage in the statutory construction of the two acts in question.

"The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent. [Citation.] The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, a court may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16.

The construction of a statute is also a question of law that is reviewed *de novo*. *Id.*

¶ 12   The Privacy Act was enacted in 2008 to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2018). The Privacy Act defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

¶ 13   Section 15 of the Privacy Act (*id.* § 15) imposes various obligations upon private entities with respect to the collection, retention, disclosure, and destruction of biometric identifiers and

---

[1]For this reason, we ignore those portions of the briefs before us in which the arguments are based upon the specific allegations made in either McDonald's original or amended complaint. Such issues are simply irrelevant to the question of law presented in the certified question.

biometric information. These include the following:

"(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* § 15(b).

¶ 14 The obligations imposed upon private entities are enforceable through private rights of action. Specifically, section 20 of the Privacy Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.* § 20. Section 20 further provides:

"[a] prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.*

Notably, no "additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33.

¶ 15    This is an important point, as we note again that the certified question specifically asks us to consider the applicability of the Compensation Act's exclusivity provisions to a claim against an employer by its employee for "statutory damages" resulting from a violation of an employee's statutory privacy rights under the Privacy Act. We take this to refer to a claim for the liquidated damages provided for in in the statutory text cited above and which were actually sought in the amended complaint below, not to a claim for any greater amount of "actual damages" that, while available under the Privacy Act, were not sought below. See 740 ILCS 14/20 (West 2018).

¶ 16    Considering that the scope of our review is limited to the specific legal question presented (*supra* ¶ 10), we cannot and do not consider the applicability of the Compensation Act's exclusivity provisions to any specific claim against an employer by its employee for "actual damages" resulting from a violation of an employee's statutory privacy rights under the Privacy Act. To do so would improperly expand the scope of the certified question and would call for "an application of the law to the facts of a specific case." *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Thus, whether and under what specific circumstances the Compensation Act would preempt such a claim is simply not a question before this court, and we express no opinion on the matter.

¶ 17    Turning to the Compensation Act, we note that in general terms it "substitutes an entirely

new system of rights, remedies, and procedure for all previously existing common law rights and liabilities between employers and employees subject to the [Compensation] Act for accidental injuries or death of employees arising out of and in the course of the employment." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180 (1978). Pursuant to the statutory scheme implemented by the Compensation Act, the employee gave up his rights to sue in court, but recovery for injuries arising out of and in the course of his employment became automatic. *Id.* The employer was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. *Id.* "This trade-off between employer and employee promoted the fundamental purpose of the [Compensation] Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Id.* at 180-81.

¶ 18    With respect to the protections provided for employers, the Compensation Act specifically states that

> "[n]o common law or statutory right to recover damages from the employer *** is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 2018).

The Compensation Act also provides that "[t]he compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act." *Id.* § 11. Considering these two "exclusivity provisions," our supreme court "has indicated that the [Compensation Act] generally provides the exclusive means by which an employee can recover against an employer for a work-related injury." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 14.

¶ 19    "However, an employee can escape the exclusivity provisions of the [Compensation] Act if the employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the [Compensation] Act." *Id.* Obviously, any claim for an *intentional* violation under section 20(2) of the Privacy Act (740 ILCS 14/20(2) (West 2018)) would clearly fall under the first exception and would therefore not be preempted by the Compensation Act. However, it is under the fourth exception to the exclusivity provisions of the Compensation Act, compensability, that we resolve the entirety of the certified question before us.

¶ 20    As our supreme court itself has acknowledged, it "has had limited opportunity to address what we originally meant *** when we used the phrase 'not compensable' to carve out a category of injuries for which the exclusive remedy provision would not be applicable." *Folta*, 2015 IL 118070, ¶ 17. The court's jurisprudence on the matter is largely contained in a handful of decisions. See, *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556 (1976); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229 (1980); *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455 (1990); *Folta*, 2015 IL 118070.

¶ 21    In *Folta*, 2015 IL 118070, ¶ 1, our supreme court's most recent opportunity to address this issue, the court found an employee's negligence action against his employer was barred by the exclusive remedy provisions of the Compensation Act, even when the employee's injury first manifested after the expiration of certain statute of limitations contained therein.[2] In summarizing the development of the compensability exception, the court stated:

---

[2]The *Folta* decision also considered the same question with respect to the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2010)), an act not at issue here. See *Folta*, 2015 IL 118070, ¶ 1. However, as the court noted in *Folta*, the corresponding exclusivity provisions in the two acts "have been viewed analogously for purposes of judicial construction." *Id.* ¶ 13.

"In *Pathfinder* \*\*\*, an employee brought a claim for disability benefits under the [Compensation] Act as a result of the severe emotional shock she suffered after assisting a coemployee whose hand was severed in a machine. The court held that 'a psychological disability is not of itself noncompensable under the Workmen's Compensation Act.' [Citation.] The court reasoned that this type of injury was within the concept of how we defined an accidental injury. The court found that the term 'accident' was defined broadly and included anything that happened 'without design or an event which is unforeseen by the person to whom it happens.' [Citation.] Therefore, the court concluded that an employee who suffered a sudden, severe emotional shock after witnessing the injury of a coemployee had suffered an accident within the meaning of the [Compensation] Act, even though the employee sustained no physical trauma or injury. [Citation.] Thus, the workers' compensation claim could proceed.

Thereafter, in *Collier*, the court was asked to consider whether an employee could bring a common-law action to recover for the emotional distress arising from an employer's conduct in failing to provide medical assistance after he suffered a heart attack. In addressing whether the employee could escape the bar of the exclusivity provisions, the court set out four categories, without citation, including consideration of whether the injury was 'compensable' under the [Compensation] Act. [Citation.] The court merely relied on the decision in *Pathfinder* to find that emotional distress was 'compensable' under the [Compensation] Act and, therefore, a claim for emotional damages could not escape the bar of the exclusivity provisions. [Citation.]

Lastly, in *Meerbrey*, the court considered whether emotional distress suffered as a consequence of false imprisonment, false arrest, or malicious prosecution was

'compensable' under the [Compensation] Act. Although the court recognized that some jurisdictions had held that the type of emotional injuries suffered as a result of being falsely imprisoned were not the type of 'personal injury' covered by workers' compensation laws, the court found they were compensable where the employee failed to differentiate the type of emotional injuries from those suffered in *Pathfinder* and *Collier*. [Citation.]

Thus, *Pathfinder*, *Collier* and *Meerbrey* stand for the proposition that whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the [Compensation] Act. These cases do not stand for the proposition that whether an injury is compensable is defined by whether there is an ability to recover benefits for a particular injury sustained by an employee." *Id.* ¶¶ 20-23.

The *Folta* decision went on to stress that it is only where "the injury is the type of work-related injury within the purview of the [Compensation Act]" that an employer's liability is governed exclusively by the provisions of that act. *Id.* ¶ 36.

¶ 22   We are not aware of a single Illinois appellate decision, regardless of the context, applying or expanding upon *Folta*'s relatively new characterization of "compensability" under the Compensation Act as being a question of "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the [Compensation] Act." *Id.* ¶ 23. Nor are we aware of any Illinois appellate decision applying this definition of the compensability standard to the question of whether the Compensation Act preempts a claim by an employee against an employer for liquidated damages under the Privacy Act. However, we do agree with the following observation from a federal court considering the issue: "the *Folta* court made clear that this inquiry is broader than just whether an injury arises out of and in the course of employment and does, to some extent, consider the character of the injury." *Treadwell v. Power Solutions*

*International, Inc.*, 427 F. Supp. 3d 984, 992 (N.D. Ill. 2019).

¶ 23    Regarding the "character of the injury" at issue here, we note that in discussing the availability of a claim for liquidated damages by an individual "aggrieved" by a violation of the Privacy Act, our supreme court has indicated that a "person who suffers actual damages as the result of the violation of his or her rights would meet this definition of course, but sustaining such damages is not necessary to qualify as 'aggrieved.' " *Rosenbach*, 2019 IL 123186, ¶ 30.

> "Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. *** [S]uch a person or customer would clearly be 'aggrieved' within the meaning of section 20 of the [Privacy] Act [citation] and entitled to seek recovery under that provision. No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action."
> *Id.* ¶ 33.

¶ 24    This is so, the court explained, because when a "private entity fails to adhere to the statutory procedures ***, 'the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized.' [Citation.] This is no mere 'technicality.' The injury is real and significant." *Id.* ¶ 34.

¶ 25    Furthermore, in discussing how allowing a claim without requiring any further actual damages furthered the Privacy Act's purpose of addressing the risks and problems associated with the improper compromise of an individual's biometric identifiers or biometric information, our supreme court has found:

> "The strategy adopted by the General Assembly through enactment of the [Privacy]

Act is to try to head off such problems before they occur. It does this in two ways. The first is by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected to begin with, before they are or can be compromised. The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law [citation] whether or not actual damages, beyond violation of the law's provisions, can be shown.

The second of these two aspects of the law is as integral to implementation of the legislature's objectives as the first. Other than the private right of action authorized in section 20 of the [Privacy] Act, no other enforcement mechanism is available. It is clear that the legislature intended for this provision to have substantial force. When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone. Compliance should not be difficult; whatever expenses a business might incur to meet the law's requirements are likely to be insignificant compared to the substantial and irreversible harm that could result if biometric identifiers and information are not properly safeguarded; and the public welfare, security, and safety will be advanced. That is the point of the law. To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse *** would be completely antithetical to the [Privacy] Act's preventative and deterrent purposes." *Id.* ¶¶ 36-37.

¶ 26    In contrast, and in considering the purview of the Compensation Act, we note again that the Compensation Act's provisions comprise a "trade-off between employer and employee promot[ing] the fundamental purpose of the [Compensation] Act, which [is] to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay*, 74 Ill. 2d at 180-81; *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 41 ("The main purpose of the [Compensation] Act is to provide financial protection for injured workers ***."); *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 556 (2004) ("the Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers"). "The [Compensation] Act does not apply to anticipated future injuries, and an employee's rights under the [Compensation] Act accrue only at such time when a work-related injury occurs." *Wieseman v. Kienstra, Inc.*, 237 Ill. App. 3d 721, 724 (1992).

¶ 27    In light of the above discussion, we fail to see how a claim by an employee against an employer for liquidated damages under the Privacy Act—available without any further compensable actual damages being alleged or sustained and designed in part to have a preventative and deterrent effect—represents the type of injury that categorically fits within the purview of the Compensation Act, which is a remedial statute designed to provide financial protection for workers that have sustained an actual injury. As such, we conclude that the exclusivity provisions of the Compensation Act do not bar a claim for statutory, liquidated damages, where an employer is alleged to have violated an employee's statutory privacy rights under the Privacy Act, as such a claim is simply not compensable under the Compensation Act.

¶ 28    And, while no district of the Illinois Appellate Court has considered this particular issue, we note that several federal courts have generally done so and more generally concluded that the Compensation Act does not preempt a suit by an employee against an employer under the Privacy

- 14 -

Act. See *Snider v. Heartland Beef, Inc.*, No. 4:20-cv-04026-SLD-JEH, 2020 WL 4880163, at *5 (C.D. Ill. Aug. 14, 2020); *Lenoir v. Little Caesar Enterprises, Inc.*, No. 19-cv-1575, 2020 WL 4569695, at *4 (N.D. Ill. Aug. 7, 2020); *Cothron v. White Castle System, Inc.*, No. 19 CV 00382, 2020 WL 3250706, at *6 (N.D. Ill. June 16, 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020); *Treadwell*, 427 F. Supp. 3d at 992-93 (N.D. Ill. 2019); see also *Mintun v. Kenco Logistics Services LLC*, No. 19-2348, 2020 WL 1700328, at *2 (C.D. Ill. Apr. 7, 2020) (motion to stay a federal case, pending this court's resolution of the very case now before us, denied where "[w]ithout ruling on the question directly, the Court concludes it is unlikely that a state appellate court would rule that the [Compensation Act] preempts [the Privacy Act]"). In addition, we are aware that numerous circuit courts in this state have also generally considered this issue, and likewise appear to be unanimous in reaching the same general conclusion. See *Cothron*, 2020 WL 3250706, at *6 (citing cases).

¶ 29 For the foregoing reasons, we answer the certified question in the negative and remand this matter to the circuit court.

¶ 30 Certified question answered; cause remanded.

**No. 1-19-2398**

| | |
|---|---|
| **Cite as:** | *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-CH-11311; the Hon. Raymond W. Mitchell, Judge, presiding. |
| **Attorneys for Appellant:** | Richard P. McArdle and Joseph A. Donado, of Seyfarth Shaw LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ryan D. Andrews and J. Eli Wade-Scott, of Edelson PC, of Chicago, and J. Aaron Lawson, of Edelson PC, of San Francisco, California, for appellee. |
| *Amicus Curiae***:** | David M. Schultz, Gretchen Harris Sperry, and John P. Ryan, of Hinshaw & Culbertson, LLP, of Chicago, for *amici curiae* Affected Illinois Employers. |