788 N.E.2d 82 (2003)
338 Ill. App.3d 58
272 Ill.Dec. 778
Alan PIETRUSZYNSKI and Tim Pietruszynski, Plaintiffs-Appellants,
v.
The McCLIER CORPORATION, ARCHITECTS AND ENGINEERS, INC., a Delaware Corporation, Defendant-Appellee.
No. 1-02-1371.
Appellate Court of Illinois, First District, Second Division.
March 25, 2003.
*83 Eugene K. Hollander, Chicago, for Appellant.
Wildman, Harrold, Allen & Dixon, Chicago (Kathy P. Fox and Paul D. Cranley, of counsel), for Appellee.
Justice CAHILL delivered the opinion of the court:
Our ruling addresses two issues: (1) whether an employee who testifies on behalf of a coworker in a workers' compensation hearing may pursue a retaliatory discharge claim if he can prove his discharge is causally related to his participation in the hearing; and (2) whether an employee who repeats an employer's remarks that may relate to a motive for plaintiffs' discharge are admissible as admissions by the employer.
Plaintiffs Alan and Tim Pietruszynski were laborers employed by defendant the McClier Corporation, Architects and Engineers, Inc. (McClier). Their brother Scott was also employed by McClier. Scott filed a workers' compensation claim for injuries sustained in a construction accident on a McClier jobsite. Plaintiffs were subpoenaed to testify at the workers' compensation hearing. Plaintiffs were laid off one month after testifying. They then filed a complaint against McClier, alleging retaliatory discharge.
Tim testified in a deposition that he was hired as a laborer by McClier in 1998. Tim said he secured a job with McClier because he was friends with Dan Svoboda, McClier's highest ranking superintendent. Tim was assigned to a project at the Sun-Times newspaper building. The project was expected to be completed in June 1999. Scott, also assigned to the Sun-Times project, was injured in a scaffold accident at the site in January 1999. Tim did not witness the accident but was in the area where Scott fell. Tim was reassigned to another project the day after the accident. *84 Manny Juarez, Mike Smagur and Ed Bogacki were Tim's supervisors on that project. Tim knew that the project would end soon. Tim expected to be transferred to another project based on Svoboda's comment that he needed Tim at another site.
Tim received a subpoena to testify in Scott's workers' compensation hearing in April 1999. The hearing was continued and finally conducted in May 1999. Tim told his supervisors that he was leaving to testify on the day of the hearing. Juarez shook his head and told Tim that he and his brother Alan "are [expletive deleted] yourselves." Tim said this comment was made in Smagur's and Bogacki's presence. Tom Corning, McClier's chief operating officer, had been told that Tim and Alan would need time off to testify. Tim testified that Svoboda later admitted that Corning said that Tim and Alan had testified favorably on their brother's behalf.
Tim testified that on Friday June 18, 1999, the project was not completed. He expected to return to the site on Monday June 21, 1999. Svoboda told Tim that he would see him on Monday. Tim saw Svoboda during the weekend of June 19-20. Svoboda told Tim that Jerry Strom, the project manager, had told Svoboda not to let Tim return to the jobsite on June 21. Strom also had told Svoboda not to let Tim report to the DuPage jobsite. Tim testified that Svoboda had been told by Corning that "there is not going to be a Pietruszynski working for McClier." Tim asked to be assigned to other McClier projects but was told there were no available positions.
Alan testified that he was hired by McClier through his brother Scott in September 1998. Alan's part-time employment became full time in November 1998. Alan was working at the Sun-Times project in 1999 when his brother Scott was injured in a scaffolding accident. Alan was transferred to another project the day after the accident. Alan testified that he knew that project would be ending in June. Alan testified that Svoboda told him he would be assigned to a project in Sterling, Illinois.
Alan received a subpoena to testify at Scott's workers' compensation hearing. Alan testified that Juarez told him and Tim that they were "[expletive deleted] themselves" the day they left work to testify at the hearing. Alan testified that his last day of work with McClier was June 18, 1999. He was never assigned to the Sterling project or another McClier project.
Tom Corning testified and denied that he told superintendents not to hire plaintiffs. Corning testified that he was not usually involved in layoff decisions, but he conceded that he had been involved in laying off plaintiffs. Corning said that the only reason plaintiffs were not assigned to other projects was because of a lack of work. McClier records submitted as exhibits during Corning's deposition show that laborers were hired for both the DuPage and Sterling projects. Records also show that the number of laborer hours increased in June 1999, when plaintiffs were laid off.
Dan Svoboda testified and admitted that he promised Tim he would hire him for the DuPage project as soon as a need for labor arose. Svoboda testified that Tim became impatient and chose to sue McClier instead. Svoboda conceded that he did hire a friend for part-time labor. Svoboda explained that he hired his friend instead of Tim for personal reasons. Svoboda also denied telling Alan that he would be assigned to the Sterling project. Svoboda explained that he was not the superintendent of the Sterling project and had no authority to make hiring decisions for that project. Svoboda also denied that either *85 Corning or Strom told him not to hire either plaintiff.
Manny Juarez testified and denied telling plaintiffs they were "[expletive deleted] themselves" when plaintiffs left to testify. Juarez said he did not care that plaintiffs were testifying since the matter did not concern him.
McClier filed a motion for summary judgment, arguing that plaintiffs failed to establish a prima facie case of retaliatory discharge. McClier contended that Svoboda's statements, repeating what he had allegedly been told by McClier supervisors, were inadmissible as double hearsay and that plaintiffs' self-serving testimony alone could not support a retaliatory discharge claim. The trial court agreed and found that the statements were inadmissible hearsay. The trial court also found unreliable plaintiffs' testimony about Juarez's statement that plaintiffs were "[expletive deleted] themselves" by testifying for their brother. The trial court entered summary judgment for defendant.
Plaintiffs argue on appeal that the trial court erred in finding Svoboda's statements were hearsay, in making credibility determinations at the summary judgment stage, and failing to consider the timing of plaintiffs' discharge, 29 days after they testified for their brother.
We review a grant of summary judgment de novo. Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill.2d 107, 113, 208 Ill.Dec. 662, 649 N.E.2d 1323 (1995). Summary judgment is not proper where there is an issue of material fact. Sollami v. Eaton, 201 Ill.2d 1, 6-7, 265 Ill.Dec. 177, 772 N.E.2d 215 (2002). An issue of fact is material if it has legal probative force as to the controlling issue. First of America Bank, Rockford, N.A. v. Netsch, 166 Ill.2d 165, 178, 209 Ill.Dec. 657, 651 N.E.2d 1105 (1995). We first consider a threshold issue mentioned in passing by defendant, relating to plaintiffs' ability to pursue a retaliatory discharge claim under these facts. The issue is referenced in a footnote:
"The plaintiffs assume, without reference to any legal authority, that their testimony at a fellow employee's workers[`] compensation hearing was a protected activity. However, while courts have held that filing one's own worker's compensation claim is a protected activity, no Illinois court has held that testifying in someone else's worker's compensation case is a protected activity."
Plaintiffs responded with a footnote of their own:
"While Defendant implies that Plaintiffs may not have engaged in protected activity since they did not testify at their own worker's compensation hearing, how could this not be protected activity? As the two Plaintiffs and the Petitioner in the workers' compensation case were brothers and worked for the same employer, legally, there is no distinction than the traditional scenario where the Plaintiff brings his own retaliatory discharge case. See, e.g. Bea v. Bethany Home, Inc., 333 Ill.App.3d [410, 266 Ill. Dec. 781], 775 N.E.2d 621 (2002) (upholding cause of action for retaliatory discharge where plaintiff was discharged for his anticipated testimony at a DCFS hearing with regards to allegation of child abuse in derogation of Abused and Neglected Children Reporting Act.)" (Emphasis in original.)
Plaintiffs' citation to Bea aside, whether plaintiffs engaged in protected activity here is an issue of first impression in Illinois. Bea is analogous, but not on point. In Bea, we considered whether the plaintiffs discharge violated the public policy expressed in the Abused and Neglected Child Reporting Act (325 ILCS 5/9.1 (West 2000)). Bea, 333 Ill.App.3d at 414, 266 *86 Ill.Dec. 781, 775 N.E.2d 621. Our analysis applied the test set out in Barr v. Kelso-Burnett Co., 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985). This test requires us to determine what public policy underlies the particular statutory provision to decide whether a plaintiffs discharge violated that policy. Barr, 106 Ill.2d at 527, 88 Ill.Dec. 628, 478 N.E.2d 1354. No Illinois court has yet considered whether discharging an employee for testifying in another employee's workers' compensation hearing violates the public policy expressed in the Workers' Compensation Act (the Act) (820 ILCS 305/1 et seq. (West 2000)). Our research reveals that other states have addressed this issue by defining "protected activity" under their workers' compensation acts to include testifying in a proceeding, in addition to filing or pursuing a claim. See Ohio Rev.Code Ann. § 4123.90 (West 2002).
The general rule in Illinois is that an at-will employee may be discharged by an employer at any time and for any reason. Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill.2d 12, 17-18, 230 Ill. Dec. 596, 694 N.E.2d 565 (1998). A limited exception to this rule was recognized by our supreme court in Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Kelsay recognized an employee's right to file a retaliatory discharge claim if he was fired for seeking workers' compensation benefits. Kelsay, 74 Ill.2d at 181-85, 23 Ill.Dec. 559, 384 N.E.2d 353. Since Kelsay, retaliatory discharge actions have been allowed in two kinds of cases: (1) for exercising rights under the Act (820 ILCS 305/1 et seq. (West 2000)); and (2) for reporting employer misconduct. Fiumetto v. Garrett Enterprises, Inc., 321 Ill.App.3d 946, 949, 255 Ill.Dec. 510, 749 N.E.2d 992 (2001). Our supreme court has continued to stress the narrow scope of the tort of retaliatory discharge, confining it to the classes of cases noted above. Buckner, 182 Ill.2d at 19-20, 230 Ill.Dec. 596, 694 N.E.2d 565; Zimmerman v. Buchheit of Sparta, Inc., 164 Ill.2d 29, 37, 206 Ill.Dec. 625, 645 N.E.2d 877 (1994); Fisher v. Lexington Health Care, Inc., 188 Ill.2d 455, 460, 243 Ill.Dec. 46, 722 N.E.2d 1115 (1999).
The parties concede that firing an employee for filing a workers' compensation claim is against public policy and will support a retaliatory discharge claim. Kelsay, 74 Ill.2d at 181-82, 23 Ill.Dec. 559, 384 N.E.2d 353. But plaintiffs here did not seek benefits under the Act themselves. They participated in someone else's claim for which they now allege they were discharged. We must determine whether a discharge based on participation in a workers' compensation proceeding as a witness, if proven, falls within the narrow class of cases recognized by our supreme court as violating public policy. We conclude that it does.
Public policy "concerns what is right and just and what affects the citizens of the State collectively. * * * Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, * * * a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." Palmateer v. International Harvester Co., 85 Ill.2d 124, 130, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).
Illinois public policy favors protection of workers covered by the Act. Groark v. Thorleif Larsen & Son, Inc., 231 Ill.App.3d 61, 172 Ill.Dec. 799, 596 N.E.2d 78 (1992). The Act was designed to promote speedy recovery without proof of fault for accidental injuries in the workplace. Fregeau v. Gillespie, 96 Ill.2d 479, 486, 71 Ill.Dec. 716, 451 N.E.2d 870 (1983). The purpose of the Act would be undermined *87 if coworkers, likely witnesses to a workplace injury, are deterred from testifying in a workers' compensation hearing for fear of employer retaliation. As our supreme court noted in Kelsay:
"The Workmen's Compensation Act, in light of its beneficent purpose, is a humane law of a remedial nature. [Citation.] It provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this State. Consequently, its enactment by the legislature was in furtherance of sound public policy. [Citation.] We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge." Kelsay, 74 Ill.2d at 181, 23 Ill.Dec. 559, 384 N.E.2d 353.
We conclude that protecting participation in workers' compensation hearings is consistent with public policy and promotes the purpose of the Act as recognized in Kelsay. We also believe that extension of the retaliatory discharge cause of action to plaintiffs here is consistent with the supreme court's narrow definition of the tort and the plain language of the Act. The definition of "employee" under the Illinois statute includes plaintiffs here. 820 ILCS 305/1(b)(2) (West 2000). Defendant is an "employer" that is bound by all provisions of the Act. 820 ILCS 305/1(a) (West 2000). The Industrial Commission is vested with the power to subpoena witnesses to testify at hearings. 820 ILCS 305/16 (West 2000). To further the policy set out above, it follows that an employee required to testify at a workers' compensation hearing under subpoena should not be punished. We now consider the substantive issues raised.
Plaintiffs first argue that statements attributable to McClier employees were improperly excluded as hearsay. We agree.
McClier concedes that the statements made by Tom Corning and Jerry Strom relating to why plaintiffs were no longer working for McClier are party admissions. Among these is the statement of Corning, McClier's chief operating officer, that "there is not going to be a Pietruszynski working for McClier." McClier's argument is limited only to the admissibility of Dan Svoboda's repetition of these statements to Tim. McClier reasons that Svoboda's statement is double hearsay. We disagree.
A statement made out of court by a party to an action, which tends to establish or disprove a material fact in a case, is admissible as an exception to the hearsay rule and is competent evidence against that party. Pavlik v. Wal-Mart Stores, Inc., 323 Ill.App.3d 1060, 1064, 257 Ill.Dec. 381, 753 N.E.2d 1007 (2001), citing Bafia v. City International Trucks, Inc., 258 Ill.App.3d 4, 9, 196 Ill.Dec. 121, 629 N.E.2d 666 (1994). A statement by an agent may be an admission on the part of the principal and may be introduced substantively against the principal. Pavlik, 323 Ill.App.3d at 1064, 257 Ill.Dec. 381, 753 N.E.2d 1007.
McClier argues that the statement is hearsay because it was outside the scope of Svoboda's authority. McClier claims that, since Svoboda was only a laborer with minor supervisory duties, he had no authority to make hiring decisions and no authority to make comments relating to alleged hiring decisions as a result. This argument adopts the traditional agency approach to assessing whether an employee's statement is attributable to an employer as an admission. Pavlik, 323 Ill. App.3d at 1064-65, 257 Ill.Dec. 381, 753 N.E.2d 1007. There is another approach, based on remarks made, not as an agent, but within the scope of employment. We traced the use of both approaches in Pavlik, *88 where we adopted the scope of employment approach as better reasoned:
"Under the traditional agency approach, the proponent of the statement must establish that (1) the declarant was an agent or employee, (2) the statement was made about a matter over which she had actual or apparent authority, and (3) she spoke by virtue of her authority as such agent or employee. Jenkins v. Dominick's Finer Foods, Inc., 288 Ill. App.3d 827, 834 [224 Ill.Dec. 147], 681 N.E.2d 129 (1997); Bafia, 258 Ill.App.3d at 9 [196 Ill.Dec. 121, 629 N.E.2d 666]; Roberts v. Norfolk & Western Ry. Co., 229 Ill.App.3d 706, 713-14 [171 Ill.Dec. 324], 593 N.E.2d 1144 (1992). In applying this rule, many courts found damaging statements to be outside the scope of authority, even in cases involving relatively high-level employees, since employees are seldom hired to make damaging statements. Halleck v. Coastal Building Maintenance Co., 269 Ill. App.3d 887, 892 [207 Ill.Dec. 387], 647 N.E.2d 618 (1995); see Jenkins, 288 Ill. App.3d at 834 [224 Ill.Dec. 147, 681 N.E.2d 129]; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.9 at 770. (7th ed.1999) (hereinafter Handbook). The modern trend in Illinois case law seemingly rejects the traditional agency approach in favor of the scope of employment approach espoused by Rule 801(d)(2)(D) of the Federal Rules of Evidence (Fed. R.Evid.801(d)(2)(D)), which provides that statements by an employee concerning a matter within the scope of her employment constitute admissions by her employer if the statements are made during the existence of the employment relationship. Handbook § 802.9, at 770-74; see, e.g., Vojas v. K mart Corp., 312 Ill.App.3d 544 [245 Ill.Dec. 144], 727 N.E.2d 397 (2000); Halleck, 269 Ill. App.3d 887 [207 Ill.Dec. 387], 647 N.E.2d 618; Rinchich v. Village of Bridgeview, 235 Ill.App.3d 614 [176 Ill. Dec. 504], 601 N.E.2d 1202 (1992); Miller v. J.M. Jones Co., 225 Ill.App.3d 799 [167 Ill.Dec. 385], 587 N.E.2d 654 (1992). Under the scope of employment approach, the proponent of the evidence need not establish that the employee's statement was specifically authorized by the employer. See Vojas, 312 Ill.App.3d 544 [245 Ill.Dec. 144], 727 N.E.2d 397; Halleck, 269 Ill.App.3d 887 [207 Ill.Dec. 387], 647 N.E.2d 618.
The First District of this court is without consensus as to which approach to follow. The scope of employment approach was first used in Rinchich, although this court noted that the traditional agency approach continued to retain adherents. Rinchich, 235 Ill. App.3d at 626-27 [176 Ill.Dec. 504, 601 N.E.2d 1202]. Subsequently, the Bafia court seemingly analyzed the evidentiary question at issue in that case using both approaches. Bafia, 258 Ill.App.3d at 9-10 [196 Ill.Dec. 121, 629 N.E.2d 666]. Most recently, the Jenkins court reverted back to the traditional agency approach altogether. Jenkins, 288 Ill. App.3d at 834 [224 Ill.Dec. 147, 681 N.E.2d 129]. Notwithstanding, we agree with the reasoning in Rinchich, as well as Vojas and Halleck, which eliminated the requirement of proof that the employee's statement was specifically authorized by the employer and focused instead on whether the employee's statements concerned matters within the scope of her employment. We find this view to be the better reasoned and, therefore, adopt it." Pavlik, 323 Ill. App.3d at 1064-65, 257 Ill.Dec. 381, 753 N.E.2d 1007.
Applying the traditional agency approach would create an impossible burden on the plaintiffs in this case, as we noted in *89 Pavlik. We find it hard to envision a set of facts where a plaintiff would be able to prove that an employee was specifically authorized to make a statement detrimental to the employer's interests. We are persuaded by the reasoning in Pavlik and follow it here.
Svoboda relayed to Tim what he had been told by his superiors as to why Tim and Alan were no longer working for McClier. As a laborer, Svoboda was required to follow the directions of his superiors, who had allegedly decided not to employ plaintiffs. It is undisputed that Svoboda's statements were made while Svoboda was a McClier employee. The trial court's refusal to consider Svoboda's statements was decisive to the outcome of the summary judgment hearing. See Bafia, 258 Ill.App.3d at 11, 196 Ill.Dec. 121, 629 N.E.2d 666. The excluded testimony, if admissible, was probative of the ultimate issue in the case. Bafia, 258 Ill.App.3d at 12, 196 Ill.Dec. 121, 629 N.E.2d 666.
The trial court also erred when it made improper credibility determinations at the summary judgment stage. The purpose of summary judgment is to allow the trial court to determine if there are genuine issues of fact for trial, not to facilitate decisions on disputed facts. Brown v. Murphy, 278 Ill.App.3d 981, 215 Ill.Dec. 789, 664 N.E.2d 186 (1996).
Plaintiffs here testified that they were promised reassignment to another jobsite once the project to which they were assigned ended in June 1999. Tim testified that, days before he was to report to a new jobsite, he was told he was no longer needed. Alan testified he was never reassigned to a project in Sterling as he was told he would be. McClier denied both that there were available jobs at other sites after June 1999 and that plaintiffs were promised new assignments. But records show that laborers were hired at McClier jobsites after June 1999. Plaintiffs also both testified that Juarez told them they were "[expletive deleted] themselves" by testifying in their brother's workers' compensation claim. Juarez denied making this statement. Setting aside the remarks erroneously excluded as hearsay, this evidence creates a genuine issue of material fact as to whether a motive for the denial of continued employment may have been plaintiffs' participation in a workers' compensation claim. Summary judgment is improper where the heart of plaintiffs' case is McClier's motivation and intent in denying continued employment. Motive is a question of fact and generally inappropriate for summary judgment in retaliatory discharge cases. Paz v. Commonwealth Edison, 314 Ill.App.3d 591, 596, 247 Ill.Dec. 641, 732 N.E.2d 696 (2000). McClier's reliance on Lewis v. Zachary Confections Co., 153 Ill.App.3d 311, 106 Ill.Dec. 296, 505 N.E.2d 1087 (1987), is misplaced and underscores our conclusion that this case must be remanded for trial.
In Lewis, the plaintiff was hired as a temporary employee for 90 days. Lewis, 153 Ill.App.3d at 312, 106 Ill.Dec. 296, 505 N.E.2d 1087. The plaintiff claimed she was told her employment would become permanent if her work was satisfactory. Lewis, 153 Ill.App.3d at 312, 106 Ill.Dec. 296, 505 N.E.2d 1087. The plaintiff was later told she was fired for having filed a workers' compensation claim. Lewis, 153 Ill.App.3d at 312-13, 106 Ill.Dec. 296, 505 N.E.2d 1087. A friend of the plaintiffs claimed to have overheard a conversation between a supervisor and an unidentified person in which the supervisor said that the plaintiff had been fired for filing a workers' compensation claim. Lewis, 153 Ill.App.3d at 313, 106 Ill.Dec. 296, 505 N.E.2d 1087. A jury verdict was entered in the plaintiffs favor. Lewis, 153 Ill. *90 App.3d at 314, 106 Ill.Dec. 296, 505 N.E.2d 1087. We reversed on appeal, finding that the plaintiff did not establish that her discharge was causally related to her workers' compensation claim. Lewis, 153 Ill. App.3d at 315, 106 Ill.Dec. 296, 505 N.E.2d 1087.
We noted that the plaintiffs employment was in accordance with the employer's union contract for hiring temporary seasonal employees subject to discretionary layoff, as evidenced by the plaintiffs time card which was marked with a "T." Lewis, 153 Ill.App.3d at 315, 106 Ill.Dec. 296, 505 N.E.2d 1087. We also noted the lack of witnesses to corroborate the retaliatory motive the plaintiff attributed to her discharge. The only evidence presented was the plaintiffs testimony and that of her friend, a person whom the plaintiff had disclaimed as such. Lewis, 153 Ill.App.3d at 315, 106 Ill.Dec. 296, 505 N.E.2d 1087. We concluded that this evidence was insufficient to support a jury verdict for the plaintiff. Lewis, 153 Ill.App.3d at 315, 106 Ill.Dec. 296, 505 N.E.2d 1087.
McClier stresses our reluctance in Lewis to accept uncorroborated self-serving testimony as authority for us to discount plaintiffs' testimony here. But McClier overlooks that we reviewed Lewis after a jury trial where the trier of fact weighed the evidence and made credibility assessments-the same kind of evidence and credibility issues the trial court disposed of here on summary judgment. We reverse the entry of summary judgment for McClier and remand this matter for trial.
We need not reach plaintiffs' final argument that the trial court erred in failing to consider the timing of plaintiffs discharge as it related to plaintiffs' participation in the workers' compensation hearing in light of our conclusion that this case must be remanded for trial. We note only that timing may be probative of motive.
The judgment of the trial court is reversed and this case is remanded for trial.
Reversed and remanded.
McBRIDE, P.J., and BURKE, J., concur.