NOTICE

Decision filed 12/18/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0283

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CARRIE HESTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 06-L-42 |
| | ) | |
| GILSTER-MARY LEE CORPORATION, | ) | Honorable |
| | ) | William A. Schuwerk, Jr., |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

The plaintiff, Carrie Hester, appeals from the trial court's order dismissing her complaint for retaliatory discharge against the defendant, Gilster-Mary Lee Corp. (Gilster). We reverse and remand.

FACTS

On January 29, 2007, Hester filed an amended complaint for retaliatory discharge, alleging, in relevant part, that she had been assigned to work at Gilster by her employer, Manpower, Inc. (Manpower), an employment agency, and that Gilster was her "*de facto* employer." Hester alleged that during the entire time she was assigned to work at Gilster, Gilster set her daily hours, her work schedule, her hourly wage, her job assignments, and her workplace. Hester also alleged that while she was assigned to work at Gilster, no one from Manpower supervised her work in any way and that she worked "side-by-side" with regular Gilster employees with no distinction between them and herself or other workers from Manpower. She alleged that, when she was assigned to work for Gilster, Manpower had offered her no other employment opportunities, and she believed that future employers would

1

be likely to seek references from Gilster.

Hester's amended complaint included the following additional allegations:

"4. On September 13, 2006, under threat of subpoena, Hester gave testimony in the workers['] compensation case of Barba v. Gilster-Mary Lee Corporation, Case No. 06-WC-34548;

5. On the next day, September 14, 2006, Gilster-Mary Lee, by and through its agents, Greg Wright and Mike Phillips, informed Hester that [it] would not be using her services and that if she wanted other employment she would have to return to Manpower, Inc.;

6. In agreeing to testify under threat of subpoena, Hester was exercising her right to give testimony accorded to her as a citizen of the United States and in doing so was furthering Illinois [p]ublic [p]olicy of promoting the speedy recovery for employees who had been injured in the workplace and was promoting the policy of the State of Illinois as set forth in the Illinois Workers['] Compensation Act. 820 ILCS 305/1(a) [(West 2006)];

7. On September 14, 2006, Hester was refused work by [Gilster] in retaliation for her giving testimony in a proceeding authorized by the Illinois Workers['] Compensation statutes;

8. Hester was damaged as a result of Gilster's refusal in that she was deprived of gainful employment and she suffered mental anguish and distress[.]"

Gilster filed a motion for the involuntary dismissal of Hester's amended complaint, arguing that Hester's actual employer was Manpower and that Gilster had not fired Hester. In its motion to dismiss, Gilster pointed out that Hester had alleged in her amended complaint that she "was employed by Manpower" and merely assigned to work at Gilster. Gilster argued that this allegation defeated her claim for retaliatory discharge because she

2

had admitted that Gilster was not her employer. Additionally, Gilster pointed out that Hester had alleged that it had informed her "that [it] would not be using her services and that if she wanted other employment she would have to return to Manpower, Inc." According to Gilster, that allegation, together with her allegation that she was unable to find other work for more than eight weeks, showed that she could not prove that Gilster had discharged her.

Gilster's motion to dismiss included an affidavit signed by Steve Landholt, Gilster's risk manager, in which he stated that Hester was never an employee of Gilster, that Gilster did not pay her, that she was not on Gilster's payroll list, that Gilster did not maintain personnel records for her, and that she was not entitled to pension or other employee benefits through Gilster. Additionally, he stated that Manpower paid Hester for the work she had performed at Gilster and that Gilster did not set her hourly rate but had merely paid a flat fee to Manpower for her services.

The parties waived oral argument, and on April 27, 2007, the trial court entered an order granting the motion to dismiss, finding that Hester's amended complaint failed to state a cause of action upon which relief could be granted "because it fails to state facts sufficient to support allegations that she was an employee of the Defendant and that she was discharged by the Defendant." On May 16, 2007, at Hester's request, the trial court entered an order dismissing her amended complaint with prejudice so that the order would be appealable. Hester filed a timely notice of appeal.

ANALYSIS

The precise issue before the court is whether a cause of action for retaliatory discharge extends to a borrowed employee whose employment with the borrowing employer is terminated for testifying in a coworker's workers' compensation claim. In order to determine this issue we must address two separate questions. First, we must decide whether an action for retaliatory discharge exists for a borrowed employee, an issue of first

3

impression in Illinois. Second, we must determine whether Illinois public policy protects workers from discharge for testifying in a coworker's claim hearing. We answer both questions in the affirmative, reverse the circuit court's order of dismissal, and remand this cause for further proceedings.

"A plaintiff states a valid claim for retaliatory discharge only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911 (1988). The trial court dismissed Hester's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2006) ("That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim")). Since the complaint was dismissed with prejudice in response to a motion to dismiss, the central question on review is whether the dismissed complaint stated a cause of action. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 150-51, 713 N.E.2d 679, 681 (1999). This issue is one of law for which our review is *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352, 882 N.E.2d 583, 588 (2008). Our review of a section 2-619 dismissal requires that we take all well-pleaded facts in the amended complaint as true and draw all reasonable inferences from those facts which are favorable to the pleader. *Porter*, 227 Ill. 2d at 352, 882 N.E.2d at 588. Additionally, we consider whether there is a genuine issue of material fact that precludes a dismissal or, absent a question of fact, whether the dismissal is proper as a matter of law. *Evergreen Oak Electric Supply & Sales Co. v. First Chicago Bank of Ravenswood*, 276 Ill. App. 3d 317, 318-19, 657 N.E.2d 1149, 1151 (1995).

By statute, the rights and remedies of the Workers' Compensation Act (the Act) apply to borrowed employees:

"Where an employer operating under and subject to the provisions of this Act

4

loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several ***.

        ***

An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring[,] or furnishing employees to or for other employers *** and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this [s]ection." 820 ILCS 305/1(a)(4) (West 2006).

Thus, a borrowing employer is primarily liable for the payment of a borrowed employee's workers' compensation claim. *Chaney v. Yetter Manufacturing Co.*, 315 Ill. App. 3d 823, 826, 734 N.E.2d 1028, 1030 (2000).

Likewise, borrowing employers are entitled to claim the protections of the Act. *Chaney*, 315 Ill. App. 3d at 825, 734 N.E.2d at 1030. In *Chaney*, a mother who was assigned to work for the defendant by an employment agency filed a tort action seeking damages for her children for an injury she sustained while working for the defendant. The court examined the relationship between the defendant and the plaintiff and concluded that the defendant controlled her work to an extent that she was a borrowed employee of the defendant. *Chaney*, 315 Ill. App. 3d at 829, 734 N.E.2d at 1032. As a result, the court affirmed the trial court's grant of a summary judgment to the defendant on the ground that the plaintiffs were limited to the exclusive remedies of the Act.

As a borrowing employer, Gilster would be entitled to the protections of the Act.

5

Nevertheless, Gilster argues that it should not be held accountable for terminating the employment of a borrowed employee for exercising her rights under the Act. This position is untenable.

The Illinois Supreme Court first recognized retaliatory discharge as a viable cause of action in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). There, the court considered whether a "corporation's policy to terminate the employment of employees who pursued workmen's compensation claims against it" was actionable and, if so, whether the cause of action would support claims for punitive damages. *Kelsay*, 74 Ill. 2d at 179, 384 N.E.2d at 356. In ruling that a retaliatory discharge cause of action should be recognized and that those pursuing such claims could request punitive damages, the supreme court relied heavily upon the public policy behind the Act. *Kelsay*, 74 Ill. 2d at 180-81, 384 N.E.2d at 356-57; 820 ILCS 305/1 *et seq.* (West 2006).

"The *** Act [citation] substitutes an entirely new system of rights, remedies, and procedure for all previously existing common law rights and liabilities between employers and employees subject to the Act for accidental injuries or death of employees arising out of and in the course of the employment. [Citation.] Pursuant to the statutory scheme implemented by the Act, the employee gave up his common law rights to sue his employer in tort, but recovery for injuries arising out of and in the course of his employment became automatic without regard to any fault on his part. The employer, who gave up the right to plead the numerous common law defenses, was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme, and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. [Citation.] This trade-off between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and

6

equitable compensation for their injuries. [Citation.]

The *** Act, in light of its beneficent purpose, is a humane law of a remedial nature. [Citation.] It provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this [s]tate. Consequently, its enactment by the legislature was in furtherance of sound public policy. [Citation.] We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge." *Kelsay*, 74 Ill. 2d at 180-81, 384 N.E.2d at 356-57.

It is apparent from the foregoing that the public policy considerations which led to recognition of an action for retaliatory discharge in *Kelsay* apply equally to a claim by a borrowed employee against a borrowing employer. Accordingly, we hold that to the extent that an employee could maintain an action against an employer for retaliatory discharge as a result of activities engaged in by the employee which are protected by the Workers' Compensation Act, such an action is also available to a borrowed employee against a borrowing employer.

The recognition of a borrowed employee's right to maintain an action for retaliatory discharge resolves the primary issues raised in this appeal. Gilster argues that Hester's allegation that Manpower is her "employer" and Gilster is her "*de facto* employer" is an admission that defeats her claim, for if Gilster was not her employer, it could not have discharged her. Gilster further argues that Steve Landholt's affidavit, filed with its motion to dismiss, settles the issue with facts showing that Gilster was not Hester's employer. We disagree. Hester alleged that Gilster set her daily hours, her work schedule, her hourly wage, her job assignments, and her workplace, that no one from Manpower supervised her work in any way, and that she worked "side-by-side" with regular Gilster employees with no distinction between them and herself. In Landholt's affidavit, he averred that Hester was not

7

an employee of Gilster, that Gilster did not pay her, that she was not on Gilster's payroll list, that Gilster did not have personnel records for her, and that she had no pension or other employee benefits through Gilster.

Taking the allegations of Hester's amended complaint as true, which we must, it is apparent that Hester has alleged an employment relationship sufficient to support a claim for retaliatory discharge in that she has alleged facts which show that she was a loaned employee and that Gilster was a borrowing employer. Gilster's claims that there are insufficient allegations that it is Hester's employer are without merit. Hester has set forth sufficient allegations to raise a question of fact regarding whether Gilster is a borrowing employer, which is crucial to her retaliatory discharge cause of action because a borrowing employer has the authority to dismiss a loaned employee and return her to the loaning employer/employment agency. See *Highway Insurance Co. v. Sears, Roebuck & Co.*, 92 Ill. App. 2d 214, 221-22, 235 N.E.2d 309, 313 (1968) (where the borrowing employer controlled all aspects of the plaintiff's work, it had the right to discharge the plaintiff from her work).

Gilster also argues that Hester has failed to allege a "discharge" that would support her claim because she only alleged that she was "refused work" by Gilster and that she was required to "return to Manpower, Inc." This argument ignores the nature of a borrowed-employee relationship. In the context of that relationship, the most severe sanction a borrowing employer can impose is to refuse all further work. In that context, the sanction is tantamount to a discharge. We find that Hester sufficiently alleged a "discharge" to support her claim. Moreover, we disagree with Gilster's argument that because Hester returned to Manpower, the loaning employer, in her search for other work, she cannot prove that she had been discharged. Her return to Manpower and the time it took her to find other work relate to her claim for damages. The fact that she had an established method for finding alternate work through her relationship with Manpower is irrelevant to her assertion

8

that Gilster unlawfully terminated her employment.

The amended complaint alleges sufficient facts to show that, if proved, Gilster controlled Hester's work to an extent that Gilster was a borrowing employer with the right to discharge her. During the time she worked for Gilster, Hester was confined to her workers' compensation remedies for any injuries she might have sustained. We agree with Hester's assertion that if Gilster was allowed to shield itself from liability other than for workers' compensation benefits, then it should not be able to assert immunity from this retaliatory discharge suit by claiming it was not Hester's employer and did not discharge her but merely sent her back to Manpower, the employment agency. Allowing that outcome would violate the foundational principles of retaliatory discharge first stated by the supreme court in *Kelsay*:

> "We are not convinced that an employer's otherwise absolute power to terminate an employee at will should prevail when that power is exercised to prevent the employee from asserting his statutory rights under the *** Act. As we have noted, the legislature enacted the workmen's compensation law as a comprehensive scheme to provide for efficient and expeditious remedies for injured employees. This scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act. We cannot ignore the fact that when faced with such a dilemma many employees, whose common law rights have been supplanted by the Act, would choose to retain their jobs, and thus, in effect, would be left without a remedy either common law or statutory. This result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and is contrary to the public policy as expressed in the *** Act." *Kelsay*, 74 Ill. 2d at 181-82, 384 N.E.2d at 357.

The same rationale applies with equal force in this case. The public policy of providing efficient and expeditious remedies for injured employees would be seriously undermined if borrowing employers such as Gilster were permitted to abuse their power by discharging their borrowed employees in retaliation for exercising their rights under the Act. We, too, cannot ignore the fact that when faced with that dilemma, many workers like Hester would simply choose not to exercise their rights in order to retain their employment. As in *Kelsay*, that result would be untenable and contrary to the public policy as expressed in the Act.

Finally, although we have determined that Hester has sufficiently alleged that she was discharged by an employer who is subject to liability for retaliatory discharge, we still must decide whether she has alleged that her discharge was in retaliation for participation in a protected activity. Certainly, Hester would be protected from a discharge for pursuing her own remedies under the Act. In this case, however, she claims protection for testifying in a coworker's claim.

Before 1979, at-will workers in Illinois had no cause of action for a retaliatory discharge. The general rule " 'that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy.' " *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 19, 694 N.E.2d 565, 569 (1998) (quoting *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356 (1985)).

Soon after *Kelsay*, the court expanded the tort of retaliatory discharge to include causes of action for employees discharged for exercising their right to cooperate with criminal investigations and other aspects of enforcing the law. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 133-34, 421 N.E.2d 876, 880 (1981) ("The law is feeble indeed if it permits [an employer] to take matters into its own hands by retaliating against its

10

employees who cooperate in enforcing the law"). In *Palmateer*, the court considered "what constitutes clearly mandated public policy" sufficient to support a claim for retaliatory discharge. *Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878.

> "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] *** [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."
>
> *Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878-79.

The court held that the plaintiff in that case had stated a cause of action for retaliatory discharge because the foundation of the tort "lies in the protection of public policy, and there is a clear public policy favoring investigation and prosecution of criminal offenses." *Palmateer*, 85 Ill. 2d at 133, 421 N.E.2d at 880.

Similarly, in the case at bar, we find that Hester has stated a cause of action for retaliatory discharge because there is a clear public policy favoring the prompt and efficient resolution of workers' compensation cases. The law would be "feeble indeed" if it allowed an employer to fire an employee in retaliation for exercising her right and obligation to testify in another employee's workers' compensation case. *Palmateer*, 85 Ill. 2d at 133-34, 421 N.E.2d at 880.

In *Pietruszynski v. McClier Corp., Architects & Engineers, Inc.*, 338 Ill. App. 3d 58, 63, 788 N.E.2d 82, 86 (2003), the First District Appellate Court considered "whether a discharge based on participation in a workers' compensation proceeding as a witness, if proven, falls within the narrow class of cases recognized by our supreme court as violating public policy." The court concluded that "protecting participation in workers' compensation hearings is consistent with public policy and promotes the purpose of the Act as recognized

in *Kelsay*." *Pietruszynski*, 338 Ill. App. 3d at 64, 788 N.E.2d at 87. The court also determined that "extension of the retaliatory discharge cause of action to" plaintiffs who had not filed their own workers' compensation claims but who had participated in another worker's claim was "consistent with the supreme court's narrow definition of the tort and the plain language of the Act." *Pietruszynski*, 338 Ill. App. 3d at 64, 788 N.E.2d at 87.

The relevant facts in *Pietruszynski* are virtually identical to this case: the plaintiffs there were laborers employed by the defendant employer, a coworker had filed a workers' compensation claim, they were subpoenaed to testify in the coworker's compensation hearing, and they were laid off one month after testifying. *Pietruszynski*, 338 Ill. App. 3d at 60, 788 N.E.2d at 83. In the case at bar, Hester alleged that Gilster was her *de facto* employer, that she testified for a coworker under threat of subpoena, and that she was fired the next day. We follow *Pietruszynski* and hold that a worker who participates in a fellow employee's workers' compensation case may state a cause of action for a retaliatory discharge based upon a termination in retaliation for that participation. See also *Hoth v. American States Insurance Co.*, 753 F. Supp. 703, 708 (N.D. Ill. 1990) (discharge for planning to testify at a coworker's compensation hearing before the Illinois Industrial Commission would violate the clear mandate of public policy and be actionable as a retaliatory discharge under Illinois law).

CONCLUSION

We hold that a borrowed employee may maintain a cause of action for retaliatory discharge against a borrowing employer based upon an allegation that the employee has been discharged for engaging in activities protected by the Workers' Compensation Act. We also join the First District Appellate Court in determining that a cause of action for retaliatory discharge may be maintained for the discharge of an employee for testifying in a coworker's workers' compensation claim hearing. Based upon these holdings, we find that Hester's

12

amended complaint states a cause of action for a retaliatory discharge and that the circuit court erred in granting the defendant's motion for an involuntary dismissal. We reverse the trial court's dismissal of Hester's amended complaint, and we remand for further proceedings.

Reversed and remanded.

GOLDENHERSH and SPOMER, JJ., concur.

NO. 5-07-0283

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td>CARRIE HESTER,</td><td>)</td><td>Appeal from the</td></tr>
<tr><td></td><td>)</td><td>Circuit Court of</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td><td>Randolph County.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>No. 06-L-42</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>GILSTER-MARY LEE CORPORATION,</td><td>)</td><td>Honorable</td></tr>
<tr><td></td><td>)</td><td>William A. Schuwerk, Jr.,</td></tr>
<tr><td>Defendant-Appellee.</td><td>)</td><td>Judge, presiding.</td></tr>
</table>

**Opinion Filed**: December 18, 2008

**Justices**: Honorable Bruce D. Stewart, J.,

Honorable Richard P. Goldenhersh, J.,
Honorable Stephen L. Spomer, J.,
Concur

**Attorney for Appellant** Darrell Dunham, 1224 West Main Street, Suite A, P.O. Box 803, Carbondale, IL 62903

**Attorney for Appellee** Edward Renshaw, Feirich/Mager/Green/Ryan, 2001 West Main Street, P.O. Box 1570, Carbondale, IL 62903